Good morning, Your Honors. May it please the Court. I'm Janice Masur, appearing for the Appellants and Cross-Appellees, Tritaporn Sirisup and Sirisup, Inc. I believe this case presents a straightforward contract interpretation issue and that the plain language of the contract governs the settlement agreement. The critical questions here are what trademark and trade name issue was at issue in the Superior Court action and what did the parties mean when they said that the trademark trade name issue would be litigated out to its conclusion in the U.S. Patent Office proceeding. The trade name and trademark issues that were at issue in the Superior Court were the fifth and sixth causes of action per common law and statutory unfair competition, which alleged trade name infringement and which are essentially the Was there, in the first case, a trademark issue as such? Yes. A federal trademark, state trademark, what was it? It was state common law and unfair competition. I see. Right. Okay. Go ahead. And in those causes of action, the fifth and sixth causes of action, which specifically dealt with the trademark infringement as opposed to the breach of the non-compete clause, which were the first four But non-compete appears in your fifth cause of action in paragraph 72, twice. Right. But also they talked about the infringement on the trade name. Sure. And you've blended those two causes, the two different causes of action, one for trademark infringement and one for the violation of the non-compete clause throughout the state court complaint. Well, I think that the first four causes of action dealt only with the non-compete clause and that's those are the actions that were settled. Well, fourth cause of action refers to similar names. Third cause of action, paragraph 56, confusingly similar names. I mean, you've blended you've blended the two. I'm not I'm not accusing you of not having you know, you've you had two different problems going on. One was the use of the name. The other was the was opening a restaurant within five miles. Those are two different problems. And it's not I mean, it's not it's I think it's quite understandable that you blended the two to say, look, they opened this within five miles and that's confusing. Right. And there's and there's certainly overlap between them. But for purposes of what we're talking about, when we're talking about the carve out for the trade name and trademark issues, the point that I want to make is in terms of those causes of actions, you've got kind of two parts to those claims. And one is that there was an infringement, an allegation that there was an infringement of the trademark and trade name. And the second part is the claim for damages and for injunctive relief. The plaintiff was seeking compensatory damages, punitive damages and injunctive relief, asking the court to rule that because of this infringement, that the defendant should have to close down or move their restaurants, discontinue use of the name and so forth and disgorgement of profits. So that what do you think the settlement agreement did? I think the settlement agreement resolved the non-compete issue, the fact that they opened restaurants. And so that's just one through four and it left five and six standing. Right. And why did it say that? Well, you know, even if it says the opposite, it says the releases in Section 10 of this agreement do not apply to the trademark trade name issue that is at issue in the superior court action. Right. So it doesn't say it's so therefore is assuming or asserting that there is a trademark trade name issue at issue in the superior court action. Sure. Not that it's only. Not that the superior court action was only a non-compete action, right? That's right. It was it was two different, two different violations that were being alleged. One was the non-compete being within the distance and the time frame that they weren't supposed to be operating similar restaurants, regardless of the name. And then also the trade, the trade name, the use of the name It's Thai, which was very similar to PMI It's Thai, which was part of the the purchase sale was for the Goodwill and for the trade name. I mean, the problem is that if it meant what you say it means, then wouldn't it have stopped after the agree this agreement? The trademark trade name issue will not be resolved as a result of this agreement, period. But you're saying but it doesn't say that it then goes on and says that the trademark trade name issue will be litigated out to its conclusion in the USPTO. That sentence, in your view, is just superfluous. No, not at all. Superfluous, Your Honor, because I think that what that means is that that that phrase means that the issue which could be resolved by the U.S. Patent Office, which was pending or was about to be pending when they reopened it, would be resolved to its conclusion. What was it? You wouldn't need that sentence if the if the sentence before it just took the whole trademark trade name issue out of the agreement. Well, but I think I think I think that the important point to realize is that since the their only authority was to decide who owned this this this name, they didn't have any authority to provide any enforcement or any remedies. And so responding to my question, what is the function of that second sentence if the first one means what you say it means? The second sentence that said it will not be resolved as a result of what's the third sentence? Why do you need the third sentence? Why do I need the sentence that says it will be litigated out to its conclusion? Right. Right. I think that because I think that the reason that you need that third sentence is to establish that the conclusion means the conclusion as far as the the U.S. Patent Office could go. But if the trademark trade name issue is not your your reading is that this agreement has nothing is not doesn't have anything to do with the resolution of the trademark trade name issue. Right. That's what you're saying at all. So you don't need the last sentence. Well, I think I think that they're they were acknowledging that they were going to reopen. Remember, the U.S. Patent Office proceeding was was suspended while this litigation was enforced. And I think that what we need to realize is that the the until the the trade name issue in terms of who owned it, who had a right to use it until that was resolved, they couldn't get to the second part, which was damages and what's going to be done about it. So they had to litigate to the conclusion. The proceedings that were able to be litigated in the in the patent office, which is who owns this, who has the right to this name. And then once that was decided, then they could come back. And that's where it's important to look at the previous sentence that talked about the trade main trade name issue that was at issue in the Superior Court, because what was that issue in the Superior Court was not only usage and ownership, but also remedies. And so the first part of that would be resolved to its conclusion by the patent office. And once that was done, then that would remain. It had not been the issues that were at issue in the Superior Court, which included remedies and damages. Do you think that's the fifth and sixth causes of action? I think I think it's the it's it's the trade name trademark issues. Which one is that? Right. Fifth and sixth causes of action. So it is the fifth and sixth. You think the fifth and sixth were preserved by the settlement agreement? Right. OK. How could the sixth be be preserved by that? There's no reference in there whatsoever to anything. It's all incorporated by reference. You just said, well, it's unfair competition. Unfair. Right. But it is incorporated by reference. Unfair competition could have also referred to the non-compete clause, which runs which is the theme that runs throughout the complaint. So how could we possibly have have have thought that the sixth cause of action survived? Well, I think because the sixth course of cause of action also incorporated the trademark trade name, which was referenced in the in the in the fifth. So everything everything turns on then whether whether the fifth cause of action. I would I would more generally argue that it turns on what the trade the trademark trade name issues and what were the trademark trade name issues that was at issue in the Superior Court and at issue was ownership and usage and damages, including injunctive relief. The problem is, as I looked at this complaint yesterday, is that that trademark issue also shows up in one through four. OK, well, it's so it's very difficult to tell because you've got you've got allegations about confusingly similar names. You've repeated the names you refer to, paragraph forty nine, using similar names. I mean, that theme runs throughout those causes of action as well. Well, if your theory is right, then you didn't settle anything. Well, if that if that were but if it was to be incorporated that way, then I would say that in the summary judgment would be improper in terms of the whole complaint. And with the understanding that the the issues regarding unfair competition or race judicata to the extent it comes back to to be remanded for further proceedings in the trial court or if this court is going to resolve them. But so I think that I think that rather than maybe focusing maybe on causes of action, it is the trade name issue. Clearly, the trade name issue was not resolved by the settlement agreement that was carved out. So what once you once you pursued this in the USPTO and when the when the registration there, what do you think that entitled you to do? I think that entitled us to file a complaint here in the federal court. Going after them for all for all the prior restaurants that were opened? Or for the well, anything that used its its tie in its name. Right. I mean, I think I think that those are issues that could be resolved. But I mean, because they were opening they opened the restaurants immediately after. But then they continue to use them even after the even after the PTO made its ruling, they continued to I believe they opened another restaurant after that agreement. Wouldn't they wouldn't they have been suckered into that by the settlement agreement? I think the settlement agreement for the 2016. I'm thinking of 11B. There's a new non-compete clause, they will not open up a new restaurant with its tie in its name within a four mile radius. Right. And it says but it also says that while the USPTO action is pending, they won't open new name, they won't open new restaurants. But I think what this paragraph B does was to defer allow them to continue operating while it was pending. It didn't didn't necessarily say, OK, you'll be able to operate those restaurants forever. What period does the present complaint cover? I'm sorry, what? What period does the present complaint cover for damages? Well, certainly it covers the actions, the continued use of the of the name after the PTO ruled. Now, whether it would go backwards in time, you know, the report to go backwards in time. Well, you know, the cause of action was for infringement. And the original sales agreement for the restaurant included Goodwill and the trade name. So, you know, I think that that, you know, the allegation is that they were infringing from the get go from the minute that about a month after the settlement. I can kind of see how maybe you would have a cause of action going forward from the end of the PTO. But I don't see it because you might have that anyway, because it wouldn't be covered by the agreement because it hadn't happened yet. But I don't know how it can go backwards. Well, but it purports to go backwards. Right. And there was multiple causes of action in the federal in the federal claim. I'm sorry. There was multiple causes of action in the federal case. I understand that. I'm asking you what period it covered. Right. I think that I think that arguably could go backwards because the infringement was happening. You know, in other words, at the time of the sale agreement, Mrs. Missouri bought the trade name. And then so the arguably the infringement happened right away. So regardless of whether or not you know, and I think that even if there if there had been no USPTO action at all, she still could claim that there was an infringement based on the contract. And so I think that, you know, it could go back that way. What we've got now from the USPTO action is the is the conclusive evidence that, yes, there was an infringement or at least that she has the ownership, whether you know, whether a court or jury could find that she always had the ownership from the get go from based on the sale agreement. I think certainly that could be found. So. I reserve time. Yeah, I would like to reserve four minutes for rebuttal and to deal with the attorney fee issue. Am I out? Also, I'd just like to say generally that I think that this is I think that the language is playing the way that I am urging the court to interpret it. But if it's not, it's at the very minimum, it's ambiguous. And if the language is ambiguous as to what the intent of the parties was, then summary judgment should not have been granted in favor of the defendants and it should go back for trial. If the court finds that the language is clear and that the settlement agreement did not preclude this federal court action, then I think the court should and can look at the merits of plaintiff's motion for summary judgment and determine that she has met her burden as to the causes of action. It was completely briefed. All the evidence was submitted. The district court found in its order that everybody had an opportunity to argue everything. So this is not an issue that was waived or raised for the first time just because the district court didn't reach the issue. On de novo review, I think this court can reach the issue. And reach what issue? Pardon me? What issue did it not reach? Why did the district? What issue? Oh, the issue about whether the, if the court finds that the settlement agreement did not preclude this action and that the defendant shouldn't have had their summary judgment granted, then you've got to look at whether the plaintiff's summary judgment motion should have been granted, which is the issue the district court didn't reach on the merits because. Thank you. Unless you wanted to, well, you can keep going, but you're going to run out of time. Nope. That's all for now. Thank you. Good morning, your Honor. Police court, Kerry Ziler Z-I-L-E-R, preparing for the appellees. Could you speak into the mic, please? Yes, of course. Can you hear me better, your Honor? Yes, please. I'd like to address just a couple of issues. Um, just as first. The question I asked at the end, um, does, is your, is it your contention that the release assuming it means what you, say it means, pertains to, um, trademark infringement after the end of the USPTO decision? Yes, I do. And not only does it refer to that, um, and that is the purpose of the 1542 waiver, which is in the settlement agreement. Any claims forthcoming, whether known or unknown. A forthcoming, it could be a forthcoming claim, but that's different from a claim about a forthcoming fact that hadn't happened yet. Arising out of the same facts, which it's a critical analysis here, your Honor. When you look to whether or not the settlement agreement would preclude claims of trademark infringement or trademark usage or any other landmark type claims arising out of the relationship here, if you review the federal lawsuit, the second amended operative complaint, the facts all derive from the original purchase agreement. Now, keeping in mind that that, that was the escrow contract and contrary to the assertion of my esteemed colleague, um, Ms. Sirisup never bought any business entitled PMI It's Thai. The words it's isn't anywhere. Neither is that phrase. She registered a trademark named It's Thai, PMI It's Thai, which was disputed by my client because my client already had several restaurants with the name It's Thai noodles and more and, and et cetera. It's Thai home. Toronto already had those. And it was PTO decide. Ultimately, I guess it was withdrawn. Never decided anything. Is that right? They, he abandoned the claim. The settlement resolved that issue because the parties decided to let the PT US PTO decide who would own the trademark name. It's as simple as that. I don't understand why the trademark name, um, issue. It is necessarily in trying to, with the escrow agreement. I don't. Okay. I think there's a distinction there to be raised. The escrow agreement itself states that the business purchased was PMI Thai cuisine. The registration by Ms. Sirisup was for PMI It's Thai cuisine. Entirely different. She sued my client claiming that he had breached the purchase agreement. The escrow agreement by having businesses of a similar sounding name, where she never bought any business with the name. It's Thai trademark. Well, what did the sign say outside of the business? Um, that's, that was a disputed fact. Uh, apparently at one point the sign was changed and it said PMI It's Thai, but all the registrations with government entities, including at the local and city level was PMI Thai cuisine, including all the checks that were written throughout, uh, the, the course of Ms. Sirisup's ownership, her own bank accounts and her records all said PMI Thai cuisine. It's Thai appeared nowhere. What do you, can you tell us what you think that trademark exemption in the settlement agreement was for? Yes, I can. My client paid $25,000 to resolve the entire state court action, which as these, as your honors have said, intertwined everything related to the purchase agreement. And, and the, um, intertwining between them up to that point. And from that point forward, that settlement agreement carved out the question of trademark ownership. That's what it said. These parties were represented by counsel, including trial counsel in the federal case also drafted this agreement. They decided to let the USPTO decide existing litigation that was stayed. And they said, let's let the USPTO decide who should own the name. But what, what's the purpose of ownership, if not to be able to bring a breach or infringement action later? Well, I think that's a, that's the exact reason why my client decided to withdraw his, uh, opposition. He had settled all those claims and paid money for them. It wasn't for them to. I thought he settled not those claims. He settled all the allegations about the misuse. And the only thing that they carved out was the ownership of the name, the trademark. But, but what's the purpose of ownership if you don't have a right to exercise legal authority over the ownership? I would say that they probably would against any other defendant or any other party that would be infringing. But my client already had an existing settlement agreement where they resolved claims against that. Let's suppose, let's suppose that your client decided to open a restaurant called It's Thai Time. And they were going to open it five, It's Thai Time. Yeah, I'm sorry. Okay. And they opened it more than five miles away from Pamay It's Thai, after the USPTO. Would they have had an action against that restaurant? Because that would not have been included in the, in, in the paragraph 11 exceptions. Well. And it, and it wouldn't have violated the non-compete clause, but it would, might violate the trademark problem now, or the service mark problem. Well, to answer your question, then they, of course, could state a cause of action. They could not state an infringement cause of action. And they could not state, or they could state a trademark infringement, but not a breach of contract. Excuse me. Why not? They couldn't state a breach of contract cause of action arising from the allegations that they already, they already had in the factual basis between them. Because that arose from the purchase agreement. I understand that, but, but I mean, I, I mean, we can spin out Judge Bybee's hypothetical to, you know, so it's more, they now opened a restaurant in, you know, in Anaheim, or we'll call it its tie, which never existed at the time of this case. It just didn't exist. Does that apply? Does this apply to that? I would say, okay. I think those are two separate analysis. The one is whether or not on the basis of the Lanham Act, that states a claim against a registered mark. Right. And I would say it does. It does on that, at that point. It does. The second part, it would. Right. The second part is covered by the, by the settlement. All right. But is it, is it, can it go forward or is it precluded by the settlement agreement? That was the second part of the analysis. They already have a settlement with my client regarding these names, his use of the restaurant. But not, but not with regard to anything he's going to open in the future. If it's, if he's got a, if they've got a service mark. I would agree with you. I would agree with you on that. That is true. If he opened something, filed a federal lawsuit, alleging new facts, unrelated to the purchase agreement, unrelated to the settlement. But why isn't it a new fact that you, that now that it's been settled, that this belongs to us, you're still doing it? I'm sorry. Well, that's the whole basis of the settlement in the first place. No, the settlement was about what happened before, not what's happening in the future. Well, I disagree with that because in section 10 of the settlement agreement, where there was the quote unquote carve out, they had an indication as to what portions of the existing case and claims would proceed and where. And they were to celebrate that or the, they were to litigate that before the USPTO. What section 11 says that my client can continue to operate the existing restaurant. So what is the good of a, if they win before the USPTO, which I gather they functionally did because you withdrew your objection. It's not doing them any good now. It would for any new infringement. So if your client opens its tie in Anaheim, clearly outside of the five miles from where they're currently located, then they would have a cause of action against you. I would say specifically as to my client, as I, as I just reiterate, I would say that requires two analyses. One, does that flow from the settlement agreement? I, you said the same thing before. We're trying to find out whether the settlement precludes that cause of action. I believe the settlement precludes a cause of action that arose from existing facts. Existing facts, meaning the same restaurants or what? My client's ownership of multiple restaurants, my client's ownership. But this is the new restaurant. I just gave you a hypothetical. It's a brand new restaurant opened after the PTO makes its decision. Is that barred by the settlement agreement? I would say it would not be barred, not barred, but not carved out for that particular restaurant. So they can bring a suit and they could bring a successful suit. They could. I didn't. Now, that's a different question, whether or not it'd be successful. But it's it's it's not unsuccessful by virtue of the settlement agreement. If it's a new claim completely unrelated to any other existing facts, new restaurant outside of the realm that may be infringing on an existing ownership mark, that could state a claim under the Lanham Act. That's just not the facts here. Right. I'm just trying to figure out what the settlement agreement means. And I'm trying to figure out whether whether they whether they just got a pig in a poke here because they didn't get anything that would prevent your client from doing anything they wanted to in the future. So I'll try to do is give you a hypothetical in which they opened a new restaurant after the USPTO and they opened it clearly farther than five miles away from your client's restaurant. Does the settlement agreement protect your clients against all against a lawsuit by them? I would say it does not. That would state a Lanham Act. But but to answer your question, you asked specifically as to whether or not it would be successful. That would lead to analysis of whether or not you can register. I'm going to tell you otherwise be successful. I just want to know whether whether the settlement agreement would bar the suit. I think not. I think the facts that flow from the original purchase agreement, which was the escrow agreement that's throughout the record and also the settlement agreement, the state court case which was resolved where my client paid money in return for the dismissal of those claims and his 1542 waiver. And they agreed for any existing litigation related to this particular disputes that were already written in the USPTO, they would be resolved there. Your your your your understanding of the settlement agreement and now paragraph 11 and 11 B in particular is that your client effectively bought the right to use the names on the restaurants that it currently had in the locations where they were currently located and that that litigation was completely settled. And no matter what happened in the PTO, your clients would not have to suffer a new suit. Is that correct? It is indeed, because otherwise we have a completely illusory contact or contract with no consideration. What exactly would my clients have bought for their twenty five thousand dollars a stay? Well, I thought the twenty five thousand dollars related to the escrow agreement related to the to the noncompete clause question, but not necessarily to the trademark question. I disagree with that. I think it's out of the entire lawsuit. The only we know it didn't. We know that there's an exception in 11 A and B. Yes. Only for what is it? Right, sorry. Only for the resolution of that particular issue, the ownership issue. They already have existing litigation, the USPTO, and they agreed to resolve it. They're less expense, less cost, less litigation. I don't see from my client's perspective what he actually would have bought. Let me ask you, let's go at it in a sort of contract theory way. Is it at least ambiguous? I disagree. It's not only quite clear what what they were resolving. They took all claims related to trademark trade name, and they said this will be resolved. They litigated it out to its conclusion in the United States Patent and Trademark Office, but it doesn't say what happened after that. There is no after that. That's the resolution. No, the conclusion to its conclusion, i.e., the conclusion in the US Patent and Trademark Office, which is only a declaration, right? It is not. I mean, let me be specific. What troubles me is not whether you can, whether this would then preclude any retrospective suit. But I have a hard time understanding why it precludes a prospective suit. One with, if the, if the US, if the Trademark Office says this does not belong, in fact, that you're infringing because you're not, this does not belong to you. And then your claim is that they can continue to use it anyway. I would say. That's what I'm having trouble with, without getting a lawsuit in the future, for the future. Okay. I got a weaselly answer about whether the current suit is limited to the future, but it could be limited to the future. No, I think, and I think it just is hypothetical. It would not be limited if it was an infringing, opened new restaurant outside. But it's not a new restaurant. It's the same restaurant. But now we know that you're infringing. Not. And the Patent Office has told you you're infringement in your position, this contract allows you to continue to infringe. I actually think that the USPTS decision does not establish infringement, establish ownership. It's not conclusive, as in do you fax or any damages and only establishes ownership. My client withdrew their objection. That's exactly what I said. Okay. All right. It's now been established who the, who owns it. And your position is you can nonetheless continue to infringe. I disagree that it's an infringement or that any of the existing restaurants were infringing. But that's to be litigated. That's the, that's the, that's what she's trying to litigate. But you may be right and you'll win. But it was litigated. It was litigated in the state court. It was resolved there. Absent the USPTO litigation that the parties agreed to go ahead and lift the stay and resolve there. The entirety of that claim would have been resolved in the state court. They chose by themselves, represented by counsel to enter into a settlement agreement in written form, signed off by the parties and their attorneys saying that this particular issue regarding the trade. Suppose we thought this was at least ambiguous, at least with respect to future infringements. What would we do then? Would we send it back for a trial or what? I don't think you can. You would need to do an analysis, an analysis then based on this case on whether or not the second amended complaint stated in the federal court action arises out of the same facts and circumstances as the state court case. Because if you did. I mean, to me, it doesn't really say it's kind of vague on that. And whether it at least goes to the future, whether it also goes to the past, you can't really tell. Well, OK. For example, have there been no, have the restaurants themselves that were already identified in there, my client, say, for example, purchased the right to continue to operate them under those names. They all agreed the resolution would be here. My client would withdraw its objection to the trademark PMI, it's Thai cuisine, which he did. So if you opened a new restaurant that said PMI, any, it's Thai something or else, PMI, it's Thai noodles, PMI, it's Thai whatever, they would have a valid Lanham Act claim. They could bring that claim. What do we make of, what's your interpretation of 11B? I believe it was a, the one thing is it's a modification of the purchase agreement, which that might not have been entirely well reflected in my briefing. But the purchase agreement, the escrow agreement was a non-compete clause with a five year or a five mile radius. And this settlement agreement reduces it down to four miles. That's because one of the restaurants is within five. Is the negative, is the negative implication of this that once it's determined, once the USPTO does its job and makes a determination that they, they, you can or cannot open a business with its Thai? I would believe what it is, is it's a, this particular clause, my interpretation of it is that it was basically a restriction on any activity by my client. And then if my client chose to take further action after that point, opening new restaurants, he would then be, he may face a lawsuit related to that because the USPTO litigation had not been resolved at this point. Remember your question. They chose to do it there. So they were saying, we're saying everything, we're saying that issue. And after the USPTO litigation is resolved, anything else new besides these existing restaurants or outside of the four mile radius, that would be actionable. Now, this is a valid term. I mean, you look at the contract, it says specifically four mile radius, there's an exclusion. It's consideration paid for by my client. It's a valid contract term. Is it ambiguous? I disagree with that analysis. I see specifically that it means exactly what it says. And I'd like to reserve for rebuttal unless you have further questions. Any time to reserve, because you're over your time. Thank you very much. Briefly, Your Honors, I'd like to address on page 26 of the opening brief, I've quoted the language used by Defendant's Counsel at the time the settlement agreement was put on the record where he specifically said that the matters that were being settled were the competition between the two. It says, there will be a general release as to both parties in terms of any further litigation between the parties upon agreeing to the issues at hand. In this case, mainly being competing between defendant's restaurants and plaintiff's restaurants and the breach of contract that is the subject of that litigation. With the exception of the trademark trade name issue. Is part of the problem here that part of the contract dispute as to the escrow agreement is whether they purchased the right to use the name for the particular rest, for some particular set of restaurants? Is that part of the issue here? If I'm understanding your question, I think that what she purchased is the right to use the trade, the name, the name that was being used by the restaurant at the time of the purchase was on the sign since 2006, I believe was PMI. It's Thai. And so she purchased the right to use that name and the, and the agreement doesn't say that, does it? Pardon me? The escrow agreement doesn't say that, does it? The escrow agreement says references the trade name, but I think it doesn't use, it doesn't use that name particularly. But I think that we talked, I talked about in my brief, the store club case where this kind of thing was litigated. And I think the fact that, you know, what the checks may have said or what the registration with the secretary of state may have said isn't, isn't what's relevant. What's relevant is what does the public see? And the public was seeing PMI, it's Thai. And so I, the other thing I'd like to point out, your honors, is that, is that the, the, the patent office not, did two things really. Not only, they granted the registration for, for PMI, it's Thai to my client, but then they also rejected the defendant's application for the use of the, of the trade name, it's Thai, because they found it to be too similar and too confusing. So, you know, to the extent that, that they're continuing to operate using the, it's Thai, it's Thai trade name is clearly a violation of what was hap, what happened in the, in the U.S. patent office. And as your honors have pointed out, what, what did she get if she, if the, the, what was the point of going to the U.S. patent office and getting the, the ownership of the trade names resolved if it wasn't, if it was going to allow them to continue to do what they've been doing? I don't think we've got a, you've got, you've got a problem that I just noticed in the, in, in the settlement agreement in that 10A is the very, very broad release of each and every claim. And it uses the word claim, whether actual, potential, known, or unknown, which, you know, SIRASAP has against Supthong and it's Thai. When you get to, when you get to 11, which is the exclusion, exclusion doesn't use the word claim, it uses the word issue. And an issue is something sort of sub to a claim. So all of the claims, that's claims one through six, were labeled as claims in your state court complaint. And 10 says we've settled every claim. 11 doesn't reserve any claims, and it certainly doesn't reserve them by name. It says we've preserved an issue, an, an issue that might be related to a claim, but the claims have been settled by 10. You've only preserved the issue in 11. Well, but I think that if it's, if it's read that way, Your Honor, then the, then the, the statement, the very clear, the very defined statement, the trademark trade name issue will not be resolved as a result of this agreement would be meaningless. Right, the issue won't be resolved. The issue is going to be resolved in the, in the PTO. And that, and that would be an issue that I think counsel, I finally got him to concede. If they open up new restaurants, not the ones that were currently existing, those are the ones that are listed in paragraph 11B. If they opened up new restaurants after you got your service registration, your trademark registration, then you had a right to go against them. They were going to be limited to sort of, they sort of grandfathered these clauses, sort of bought the rights to go ahead and, and, and run these restaurants. That's, I mean, that's the way I read this, but you've still got, you've still got your mark. And you can go against any future restaurants they open if it has the words it's tie in it. But, but, and, and the, and the, the patent office said that, that the defendants have no right to use the it's tie claim, the it's tie mark. Right, except, except that you've settled that. Well, no, and I, I would again point to the language in the settlement agreement that the defense counsel brought up and said we're settling the, the competition claims here. That's, that's what their lawyer said at the court hearing on the record with respect to what they were trying to settle. He said we're settling the, the mainly the competing issues between the defendant's restaurants. In any event, the precise claim that's at issue here, the Lanham Act claim was not in the earlier case, is that right? Right. But, but the, the federal courts have held that they're substantially the same. Okay. Your time is up. Thank you both. Thank you. In case of, here is soup versus it's chai is submitted. We'll go to the last case of the day, Chinchilla versus.
judges: Berzon, Bybee, Woodcock